UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ANDREW FARKAS and ANGELICA PARKER f/k/a ANGELICA CECORA, | |
| Defendants. | |

Plaintiff, John Doe ("Plaintiff" or "Doe"), proceeding pseudonymously pursuant to 15 U.S.C. § 6851, by way of Complaint against Defendants Angelica Parker ("Parker") and Andrew Farkas ("Farkas"), alleges as follows:

## PARTIES

1. Doe is an individual residing in and is a citizen of the State of Florida. Doe was present in the State of Florida when the events described below occurred.

2. Farkas, on information and belief, is an individual residing in and is a citizen of the State of Florida. Farkas was in the State of Florida when the events described below occurred.

3. Parker, formerly known as Angelica Cecora, is an individual residing in and is a citizen of the State of New York.

## JURISDICTION

4. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because the Complaint asserts a cause of action under 15 U.S.C. § 6851. The Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a).

1

5. This Court has personal jurisdiction over Farkas because the causes of action alleged herein arise out of his contacts with New York, namely his insisting, inducing, and encouraging Parker, who was in New York at the time, to send him private videos of Doe, in violation of federal law and Florida statutory and common law.

6. The Court has personal jurisdiction over Parker because she is domiciled in New York, and she engaged in actions in New York that gave rise to the causes of action alleged herein.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims pled herein occurred in this District, and, alternatively, Defendants Parker and Farkas are subject to the personal jurisdiction of this Court with respect to this action.

## BACKGROUND

8. Parker is a prostitute and drug dealer who has spent nearly 20 years dealing illegal drugs and trading sex for money, luxury living arrangements, cosmetic surgery, exotic travel, and other accoutrements of high living from wealthy men.

9. Farkas has periodically engaged in sexual activity with Parker.

10. Parker was involved in a sexual relationship with John Doe through early 2022, but the relationship had ended by October 2022.

11. On the evening of October 14, 2022, Parker, who was then in New York City, sought to entice Farkas, who was then in Palm Beach, into flying her to Palm Beach so that they could engage in sex.

12. To achieve her goal, Parker began to send Farkas sexual text messages and videos. At 9:06 p.m., Parker texted Farkas some flirty emojis, followed a few hours later by a video of her

2

naked in front of a mirror dancing and then straddling a bean bag with the message REDACTED

13. Farkas enthusiastically responded REDACTED

14. Parker followed with another video of her naked, asking Farkas: REDACTED

15. Farkas responded even more enthusiastically, asking Parker to send him REDACTED:

REDACTED

16. To satisfy Farkas's voyeuristic desires, Parker responded with the following message, proposing that she send Farkas a REDACTED video of Doe, who she refers to throughout her text exchanges with Farkas as her REDACTED:

REDACTED

17. Farkas responded: REDACTED

18. After more urging by Farkas for REDACTED sex videos, Parker told Farkas that she was looking for a REDACTED video of Doe that she could send to Farkas.

19. Farkas responded REDACTED

3

20. Approximately 30 minutes later, Parker sent Farkas a video with the message REDACTED REDACTED

21. The video showed Doe and Parker engaging in a sexual act, which Defendant Parker demanded Doe to participate in and which Defendant Parker herself recorded in a manner so as to display Doe's face and genital areas.

22. Approximately 15 minutes later, Parker sent Farkas another video of Doe and Parker engaged in a similar sex act, which video Parker had made in a similar manner so as to depict Doe's face and genitals.

23. Hours later, Farkas was still asking for REDACTED videos of Doe and Parker: REDACTED REDACTED Parker responded by sending Farkas a *third* video she had made of Doe. Like the first two, Parker created the third video to again show Doe's face and genitals.

24. Farkas watched each of the three videos that Parker sent to him showing Doe engaged in sexual acts with Parker.

25. While sending these texts to Farkas, Parker frequently insulted Doe to Farkas, calling Doe various disparaging and demeaning names.

26. On information and belief, Farkas knew Doe's identity based upon thousands of text messages and other communications Parker had with Farkas. These communication included invitations, prior to the October 14, 2022 video transmissions, by Parker to Farkas to meet her at Doe's apartments in New York City and Miami when Doe was not home.

27. Parker had many other sex videos of her and her other sexual partners, and she could have sent those other videos to Farkas. Instead, she elected to send videos of Doe to humiliate Doe and cause him emotional harm.

28. Parker's plan to entice Farkas to fly her to Palm Beach worked. After receiving Parker's videos showing Doe engaged in sex acts with her, Farkas sent Parker airline ticket information by text and purchased tickets for Parker to fly to Palm Beach the next day.

## COUNT ONE
### (Liability Under 15 U.S.C. § 6851—Against Parker)

29. Doe repeats and restates the foregoing allegations.

30. On three separate occasions, Parker distributed to Farkas by interstate text messages videos showing Doe's uncovered genitals and the display of bodily sexual fluids from Doe while engaged in sexually explicit conduct. These videos constitute "intimate visual depictions" under 15 U.S.C. § 6851(a)(5).

31. Farkas encouraged the transmission of these videos.

32. Doe is identifiable in the videos by virtue of his face being visible in the videos.

33. Doe did not consent to the distribution of the videos to anyone, including Farkas.

34. As a result of the foregoing, Doe has been damaged.

35. Pursuant to 15 U.S.C. § 6851, Doe is entitled to, among other relief, liquidated damages of $150,000 for each video that Parker disclosed to Farkas, injunctive relief (as set forth in the Wherefore clause below), and costs of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

## COUNT TWO
### (Sexual Cyberharassment Under Fla. Stat. § 784.049—Against Parker)

36. Doe repeats and restates the foregoing allegations.

37. On three separate occasions, Parker, by electronic means, disseminated to Farkas videos that depicted Doe nude and engaging in sexual conduct.

38. The videos contain personal identification information about Doe, including by displaying his face.

39. Doe did not consent to the dissemination of the videos to anyone, including Farkas.

40. When the videos were originally created, Doe had an expectation that Parker would not disseminate the videos without his consent. Parker's dissemination of the videos to Farkas, therefore, was contrary to Doe's reasonable expectation that the videos would remain private.

41. Parker had no legitimate purpose in sending the videos of Doe to Farkas, and, as evidenced by her disparaging references to Doe when she sent the videos to Farkas, she did so with the intent to cause substantial emotional distress to Doe.

42. Parker knew that Farkas was in the state of Florida when she sent the videos.

43. Based on the foregoing, Parker engaged in sexual cyberharassment in violation of Fla Stat. § 784.049.

44. As a result of the foregoing conduct, Doe has been damaged.

45. Pursuant to Fla Stat. § 784.049, Doe is entitled to, among other relief, injunctive relief (as set forth in the Wherefore clause below), monetary damages of $10,000 for each video that Parker disclosed to Farkas or actual damages incurred as a result of such violations of Fla Stat. § 784.049, whichever is determined to be greater, and reasonable attorney fees and costs.

### COUNT THREE
### (Invasion of Privacy—Against Parker)

46. Doe repeats and restates the foregoing allegations.

47. By intentionally sending to Farkas three separate videos showing Doe engaged in [REDACTED] private sexual acts occurring in a private place, Parker intentionally and maliciously intruded on Doe's solitude, seclusion, private affairs, and private concerns.

48. Parker's intrusion on Doe's solitude, seclusion, private affairs and private concerns would be highly offensive to a reasonable person.

49. As a result of the foregoing conduct, Doe has been damaged.

## COUNT FOUR
### (Invasion of Privacy—Against Farkas)

50. Doe repeats and restates the foregoing allegations.

51. By intentionally and repeatedly asking for, encouraging and directing Parker to send him private videos of Doe engaging in REDACTED private sexual acts occurring in a private place and by viewing those videos, Farkas intentionally and maliciously intruded on Doe's solitude, seclusion, private affairs, and private concerns.

52. Farkas's intrusion on Doe's solitude, seclusion, private affairs and private concerns would be highly offensive to a reasonable person.

53. As a result of the foregoing conduct, Doe has been damaged.

## COUNT FIVE
### (Aiding and Abetting Invasion of Privacy—Against Farkas and Parker)

54. Doe repeats and restates the foregoing allegations.

55. By intentionally and repeatedly asking for, encouraging and directing Parker to send him private videos of Doe engaging in REDACTED private sexual acts occurring in a private place, Farkas induced Parker to invade Doe's privacy and gave substantial encouragement to Parker to do so.

56. Similarly, by sending Farkas private videos of Doe engaging in REDACTED private sexual acts occurring in a private place while knowing that Farkas intended to view the videos, Parker gave substantial assistance and encouragement to Farkas to invade Doe's privacy.

57. As a result of the foregoing conduct, Doe has been damaged.

## COUNT SIX
### (Civil Conspiracy to Commit Invasion of Privacy—Against Farkas and Parker)

58. Doe repeats and restates the foregoing allegations.

59. As set forth above, Parker and Farkas agreed that Parker would invade Doe's privacy by sending Farkas private videos of Doe engaging in REDACTED private sexual acts occurring in a private place.

60. Parker and Farkas each engaged in overt acts in furtherance of the conspiracy. Parker searched for and sent the videos to Farkas, and Farkas implored Parker to send, and knowingly and willingly received and viewed the videos.

61. As a result of the Parker/Farkas conspiracy to invade Doe's privacy, Doe has been damaged.

## COUNT SEVEN
### (Civil Conspiracy to Violate Fla. Stat. § 784.049—Against Farkas and Parker)

62. Doe repeats and restates the foregoing allegations.

63. As set forth above, Parker and Farkas agreed that Parker would send Farkas videos of Doe in violation of Fla. Stat. § 784.049.

64. Parker and Farkas each engaged in overt acts in furtherance of the conspiracy. Parker searched for and sent the videos to Farkas, and Farkas implored Parker to send, and knowingly and willingly received and viewed the videos.

65. As a result of the Parker/Farkas conspiracy to violate Fla. Stat. § 784.049 and the overt actions taken in furtherance of the conspiracy, Doe has been damaged.

66. Pursuant to Fla Stat. § 784.049, Doe is entitled to, among other relief, injunctive relief (as set forth in the Wherefore clause below), monetary damages of $10,000 for each video

that Parker disclosed to Farkas or actual damages incurred as a result of such violations of Fla Stat. § 784.049, whichever is determined to be greater, and reasonable attorney fees and costs.

### COUNT EIGHT
### (Civil Conspiracy to Violate 15 U.S.C. § 6851—Against Farkas and Parker)

67. Doe repeats and restates the foregoing allegations.

68. As set forth above, Parker and Farkas agreed that Parker would send Farkas videos of Doe in violation of 15 U.S.C. § 6851.

69. Parker and Farkas each engaged in overt acts in furtherance of the conspiracy. Parker searched for and sent the videos to Farkas, and Farkas implored Parker to send, and knowingly and willingly received and viewed the videos.

70. As a result of the Parker/Farkas conspiracy to violate 15 U.S.C. § 6851 and the overt actions taken in furtherance of the conspiracy, Doe has been damaged.

71. Pursuant to 15 U.S.C. § 6851, Doe is entitled to, among other relief, liquidated damages of $150,000 for each video that Parker disclosed to Farkas, injunctive relief (as set forth in the Wherefore clause below), and costs of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

### COUNT NINE
### (Aiding and Abetting Violation of Fla. Stat. § 784.049—Against Farkas)

72. Doe repeats and restates the foregoing allegations.

73. By intentionally and repeatedly asking for, encouraging and directing Parker to send him private videos of Doe engaging in REDACTED private sexual acts occurring in a private place, Farkas induced Parker to violate Florida Stat. § 784.049 and gave substantial encouragement to Parker to do so.

9

74. Parker had no legitimate purpose in sending the videos of Doe to Farkas, and, as evidenced by her disparaging references to Doe when she sent the videos to Farkas, Farkas was aware that Parker sent the videos with the intent to cause substantial emotional distress to Doe.

75. As a result of the foregoing conduct, Doe has been damaged.

76. Pursuant to Fla Stat. § 784.049, Doe is entitled to, among other relief, injunctive relief (as set forth in the Wherefore clause below), monetary damages of $10,000 for each video that Parker disclosed to Farkas or actual damages incurred as a result of such violations of Fla Stat. § 784.049, whichever is determined to be greater, and reasonable attorney fees and costs.

**WHEREFORE**, Plaintiff Doe demands judgment against Defendants Parker and Farkas for the following relief:

A. Nominal damages;

B. Actual damages;

C. Liquidated damages under 15 U.S.C. § 6851(b)(3)(A)(i);

D. Permanent injunctive relief under 15 U.S.C. § 6851(b)(3)(A)(ii) and Fla. Stat. § 784.049(5)(a), and other applicable law, ordering defendants to (i) cease display or disclosure of any and all intimate visual depictions of Plaintiff, (ii) disclose whether such intimate visual depictions have been disclosed to any other persons and the identity of those persons, and (iii) destroy any and all copies of such intimate visual depictions of Plaintiff in their possession, custody or control;

E. Permanent injunctive relief under 15 U.S.C. § 6851(b)(3)(B) maintaining the confidentiality of the Plaintiff using a pseudonym;

F. Statutory damages under Fla. Stat. § 784.049;

G. Punitive damages;

H. Attorney's fees and costs of suit pursuant to 15 U.S.C. § 6851(b)(3)(A)(i), Fla. Stat. § 784.049(5)(c), and other applicable law;

I. Prejudgment interest; and

J. Such other and further relief as the Court finds equitable and just.

## JURY DEMAND

Plaintiff John Doe demands a trial by jury on all issues.

Dated: May 29, 2025  
New York, New York

**GIBBONS P.C.**

By: *[signature: Christine A. Amalfe]*

Christine A. Amalfe  
Mark S. Sidoti  
Daniel S. Weinberger  
One Pennsylvania Plaza, 45th Fl, Suite 4515  
New York, New York 10119  
Tel: (212) 613-2000  
Fax: (212) 290-2018  
camalfe@gibbonslaw.com  
msidoti@gibbonslaw.com  
dweinberger@gibbonslaw.com

*Attorneys for Plaintiff John Doe*